MICHIKO NOGUCHI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Noguchi v. Commissioner
Docket No. 22417-89
United States Tax Court
T.C. Memo 1991-227; 1991 Tax Ct. Memo LEXIS 249; 61 T.C.M. (CCH) 2674; T.C.M. (RIA) 91227; May 22, 1991, Filed *249 Decision will be entered for the respondent. George G. Grubb, for the petitioner. Henry E. O'Neill, for the respondent. COHEN, Judge. COHEN
MEMORANDUM OPINION Respondent determined a deficiency of $ 1,183 in petitioner's Federal income tax for 1987. The issues for decision are (1) whether petitioner is entitled to an interest expense deduction under section 163(a) for an amount paid incident to petitioner's purchase of a fee simple interest in residential real property in settlement of condemnation proceedings commenced under the Hawaii Land Reform Act of 1967, Haw. Rev. Stat. ch. 516 (HLRA), and (2) if so, whether that amount, paid in 1987, is (partially) nondeductible personal interest within the meaning of section 163(h). Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue. All of the facts have been stipulated. The stipulated facts are incorporated as our findings by this reference. Background
This case is part of a litigation project that has been denominated "Summblight." In Midkiff v. Commissioner, 96 T.C. 724 (1991), filed this date, we addressed and resolved the *250 one issue that is common to all of the Summblight cases, to wit, the deductibility as interest of blight of summons damages paid to acquire a fee simple interest in residential real property. The instant case presents the additional issue of whether that amount is subject to disallowance as personal interest under section 163(h) because it was paid in 1987; we reach this issue, however, only if we decide the first issue in favor of petitioner. In Midkiff, we set forth in detail the historical background and certain operative provisions of the HLRA as well as the practices and procedures utilized by the Hawaii Housing Authority (HHA) in administering the HLRA. In accordance with the stipulation of the parties, we incorporate by this reference our statement of background facts in Midkiff and find the following facts that gave rise to petitioner's claimed interest expense deduction in this case. Petitioner resided in Honolulu, Hawaii, at the time the petition in this case was filed. Petitioner's residence was situated on a residential lot that was leased from its fee owner, Kamehameha Schools/Bernice Pauahi Bishop Estate (the estate). The lot was a part of the Koko Head *251 Community Association. Pursuant to the HLRA, petitioner applied to the HHA to acquire the leased fee interest in her residential lot. The HHA designated that lot for acquisition on April 25, 1980 (the date of designation). On May 7, 1980, the HHA filed a complaint to acquire petitioner's and the other lessees' lots in the Koko Head Community Association that were designated for acquisition (the Koko Head action). The jury in the Koko Head action determined that the fair market value of petitioner's lot as of the date of designation was $ 21,450. The estate and the lessees in the Koko Head action subsequently commenced settlement negotiations. These negotiations ultimately led to settlement and dismissal of the Koko Head action (the settlement). On May 1, 1987, pursuant to the terms of the settlement, the estate sent a Statement of Fee Offer (the offer to sell) to all lessees who leased lots that were identified in the Koko Head action and who remained as litigants in the Koko Head action. The offer to sell set forth the terms and conditions under which the estate offered to sell to the lessees their leased fee interests in their lots. The purchase price of the lot was calculated *252 as follows: Calculation of Sales Price. The Sales Price for your property is shown on the cover letter and was calculated as follows: The amount awarded by the jury as just compensation for your lot; plus Blight (as awarded by the court) at the rate of 5% per annum of the jury award (without compounding) from the date of valuation of the lot to the date shown on the cover letter (120 days from the date of this letter) * * *
Purchasing lessees received a credit against the purchase price of the lot. Specifically, the offer to sell stated: Lease Rent Payments. As a part of the closing, the lease rent paid by you from the date of valuation to the closing date will be credited against the cash you are to pay at the time of closing. Escrow will do this calculation.
The offer to sell also provided that purchasing lessees were required to pay certain costs incident to the closing, including: an additional amount to ensure payment of the costs and expenses incurred in [the Koko Head action] by the [estate and the HHA] on account of lessees in the litigation whose lots were valued by the jury but who decided not to buy.
Lessees who elected not *253 to purchase the leased fee interest in their residential lots were obligated under the terms of the settlement to pay their pro rata share of the estate's costs incurred; that amount was determined to be $ 1,422 per lot. Lessees who elected not to purchase were also obligated to pay their pro rata share of the HHA's fees and costs. The estate also offered to sell its leased fee interests to lessees who resided in the same development tract as petitioner but who were not litigants in the Koko Head action. In arriving at the purchase price for lessees who were not litigants, the estate used the same formula that it used to compute the purchase price for lessees who were litigants in the Koko Head action. The estate agreed to waive payment of the nonpurchasing lessees' pro rata shares of the estate's costs and expenses if a certain number of the lessees who were actual litigants in the Koko Head action agreed to purchase, or, alternatively, if a certain number of all of the lessees in the Koko Head Community Association agreed to purchase, the leased fee interests in their lots. The HHA, however, always required that its costs be paid. Petitioner executed the Reply to Proposal *254 that accompanied the estate's offer to sell and indicated her intent to purchase the leased fee interest in her lot. The estimated purchase price on that reply was $ 29,330, which included the value of petitioner's lot as determined by the jury in the Koko Head action, $ 21,450, plus $ 7,880 identified as "Blight to 08/29/87." Petitioner's purchase of her leased fee interest closed on August 30, 1987 (the closing date). The purchase price was $ 29,330, which included "blight of summons damages" in the amount of $ 7,880; that amount, however, was not separately stated in the escrow closing statement. Petitioner received a credit against the total purchase price for "lease rent" from April 25, 1980, to September 1, 1987, in the amount of $ 1,286.25. Petitioner claimed the $ 7,880 payment as an interest expense deduction on her 1987 Federal income tax return. Respondent disallowed that portion of petitioner's claimed interest expense deduction. Discussion
The first issue for decision is whether the $ 7,880 that petitioner paid to acquire the leased fee interest in her residential lot is deductible as interest under section 163(a). As explained above, we have addressed the *255 deductibility of the amount at issue in Midkiff v. Commissioner, supra. Petitioner's briefs merely incorporated the briefs submitted by the taxpayers in Midkiff. Similarly, respondent, in his opening brief and reply brief, wherein he incorporated his reply in Midkiff, asserts the same arguments that he asserted in Midkiff. For convenience, we repeat here the key portions of our opinion in Midkiff. Section 163(a) provides that "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." That section generally dictates that the following requirements be met: (a) There is "indebtedness"; (b) the indebtedness is that of petitioners; (c) the payment is of "interest"; and (d) for cash method taxpayers, the interest is paid in the taxable year that the deduction is claimed. Regardless of the characterization of the amount at issue, such amount is deductible only if it is paid "on indebtedness." Knetsch v. United States, 364 U.S. 361, 365, 5 L. Ed. 2d 128, 81 S. Ct. 132 (1960). Indebtedness is "an existing, unconditional, and legally enforceable obligation for the payment of a principal sum." Howlett v. Commissioner, 56 T.C. 951, 960 (1971). *256 "[A]lthough an indebtedness is an obligation, an obligation is not necessarily an 'indebtedness' within the meaning of section [163(a)]." Deputy v. du Pont, 308 U.S. 488, 497, 84 L. Ed. 416, 60 S. Ct. 363 (1940); Norton v. Commissioner, 474 F.2d 608, 610 (9th Cir. 1973), affg. a Memorandum Opinion of this Court. The "indebtedness" must be indebtedness in substance and not merely in form. Knetsch v. United States, 364 U.S. at 365-366; Karme v. Commissioner, 73 T.C. 1163, 1185 (1980), affd. 673 F.2d 1062 (9th Cir. 1982); Albertson's, Inc. v. Commissioner, 95 T.C. 415, 421 (1990). In Midkiff v. Commissioner, supra, the taxpayers argued that an indebtedness arose as of the date of designation because at that time they were unconditionally obligated to pay just compensation to the estate. The taxpayers relied in part on section 516-30 of the HLRA, which provides that a lessee who has applied to the HHA and qualified to purchase the leased fee interest "shall purchase from the [HHA] by contract within sixty days of acquisition of the interest by the [HHA]." Haw. Rev. Stat. sec. 516-30 (1985). *257 We also discussed certain other provisions of the HLRA, and of the application to purchase and the request for designation that the taxpayers submitted to the HHA, relied on by the taxpayers to support their contention that an indebtedness arose as of the date of designation. We noted that: lessees who withdrew their applications to purchase the leased fee interests from the HHA after the HHA has designated their leased fees for acquisition, but prior to acquisition by the HHA, must pay to the HHA their pro rata share of the HHA's costs for the designation and acquisition efforts and any amounts that the HHA is required by law to reimburse to the leased fee owner. [Midkiff v. Commissioner, slip. op. at 19.]
In addition, we noted that the terms of the settlement and of the lessor's offer to sell in Midkiff similarly obligated the taxpayers and the other lessees to pay their pro rata share of the lessor's litigation costs and expenses incurred in the condemnation action and their pro rata share of the HHA's costs if they did not accept the lessor's offer to sell. We concluded that the obligation imposed on the taxpayers did not rise to the level of an indebtedness *258 because: In the event that [the taxpayers] withdrew their application, or elected not to purchase, they were required to reimburse the HHA and the [lessor] for costs and expenses incurred and the ownership in the leased fee interest would remain with the [lessor]. That obligation, however, was not an "'indebtedness' within the meaning of section [163(a)]," Deputy v. du Pont, 308 U.S. at 497, and, in any event, was not the indebtedness upon which the disputed payment was computed. [Midkiff v. Commissioner, slip op. at 20.] Rather, we concluded that: [The taxpayers] were not unconditionally obligated to pay "just compensation" tothe [lessor] until they affirmatively executed the reply to the [lessor's] offer to sell, indicating their intent to purchase the lot, and escrow closed on the purchase. That is, [the taxpayers] were not obligated for the payment of a principal sum until the date that escrow closed on the purchase. [Midkiff v. Commissioner, slip op. at 20.]
We then addressed the taxpayers' contention that, even if the purported indebtedness was not unconditional until the date of closing, it still represented a sufficient *259 obligation upon which interest could accrue. We distinguished the cases that the taxpayers relied on to support their contention and stated that those cases: illustrate that, given a particular set of circumstances, a deduction will be allowed where interest accrued during a time that the obligation was materially conditional. This case, however, does not present such circumstances. [Midkiff v. Commissioner, slip op. at 31.]
Finally, we rejected the taxpayers' contention that, based on prior decisions of this Court and of other courts that similarly identified amounts awarded in a condemnation action are taxable as ordinary income to the condemnee, we were required to conclude that the disputed payment was interest within the meaning of section 163(a). We stated that the inclusion of an item in the income of the payee does not guarantee that the item is deductible by the payor and that, in any event, "The amount in dispute is only deductible under section 163(a) if it is paid on indebtedness." Midkiff, slip op. at 35. We also contrasted the typical condemnation action with a leasehold condemnation action under the HLRA and discussed the nature of an award of *260 blight of summons damages in the context of the latter. Specifically, we noted that the purpose of blight of summons damages is to compensate a condemnee for loss of use of the cash equivalent of the taken property; in an HLRA leasehold condemnation action, however, the lessee remains in possession of the leased fee interest and the lessor, the condemnee, continues to receive lease rent payments during the terms of the lease. We therefore concluded that the amount at issue was not paid solely to compensate the lessor for delay in the receipt of funds. Petitioner contends that the facts that gave rise to the claimed deduction in this case are identical in all material respects to the facts that gave rise to the taxpayers' claimed deduction in Midkiff. We therefore conclude, based on the above and for the additional reasons set forth in Midkiff v. Commissioner, 96 T.C. 724 (1991), filed this date, that the blight of summons damages petitioner paid to the estate to acquire the leased fee interest in her residential lot are not deductible as interest because that amount was not paid on an indebtedness within the meaning of section 163(a). Because of our disposition of this *261 issue, we need not address the second issue for decision in this case. To reflect the foregoing, Decision will be entered for the respondent.